Thomas A. ERICSON, Sr., Administrator of the Estate of Deborah Ericson, Deceased, Plaintiff,

v.

The FORD MOTOR COMPANY, Defendant.

No. B–C–84–92.

United States District Court, E.D. Arkansas, N.D.

Aug. 9, 1985.

As Amended Jan. 3, 1986.

---

27. *See Lasky,* 558 F.2d at 1137; *cf. ASCAP,* 341 F.2d at 1008.

David Blair, Batesville, Ark., for plaintiff.

Daniel W. Donahue, Winston-Salem, N.C., Alston Jennings & Ed Lowther, Little Rock, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

Pending before the Court is plaintiff's motion to compel. For the reasons stated below, the motion will be granted.

Plaintiff in this wrongful death action is Thomas Ericson, administrator of the estate of Deborah Ericson, deceased. Defendant in the action is the Ford Motor Company. The complaint alleges that Ms. Deborah Ericson's death occurred because her Ford automobile spontaneously went from park into reverse. Plaintiff contends that the automobile was defectively and negligently designed, and that, prior to the date of the manufacture of Ms. Ericson's vehicle, Ford knew of the dangerous propensities of such vehicles. Defendant Ford denies plaintiff's allegations.

Among its discovery requests, plaintiff has requested information concerning all consumer complaints and litigation against Ford involving any alleged "park to reverse" occurrences. Defendant Ford has refused to divulge this information absent a protective order which would prevent

plaintiff from disclosing the information. Plaintiff has refused to agree to such a protective order.

Ford believes that a protective order is necessary because the information requested consists of unverified and self-serving complaints. According to Ford, public disclosure of this information would be both misleading and harmful to its reputation. Ford further contends that plaintiff cannot claim any legitimate need to disseminate the information outside the confines of the lawsuit.

In arguing that a protective order is necessary, Ford relies on the Supreme Court's recent statement that "Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984). In *Rhinehart*, the Supreme Court upheld a protective order granted by the trial court which prevented the public disclosure of the identity of individuals who had donated money to the Aquarian Foundation, a small religious group believing in life after death and the ability to communicate with the dead through mediums. In upholding the grant of the protective order, the Court determined that no first amendment rights attached to information gained through pre-trial discovery. The Court determined that first amendment protection was unwarranted and "would impose an unwarranted restriction on the duty and discretion of a trial court to oversee the discovery process." The Court stated that "the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." The Supreme Court further noted that heightened First Amendment scrutiny of each request for a protective order would necessitate burdensome evidentiary hearings and could lead to time-consuming interlocutory appeals.

▇ Defendant Ford interprets *Rhinehart* to mean in effect that protective orders are mandated in all situations where a possibility of harmful public disclosure ex-

ists. This Court and other courts, however, do not read *Rhinehart* so broadly. *In re "Agent Orange" Product Liability Litigation*, 104 F.R.D. 559 (E.D.N.Y.1985); *International Union v. Garner*, 102 F.R.D. 108 (M.D.Tenn.1984). This Court reads *Rhinehart* to mean that trial courts have wide discretion in deciding when, under Fed.R.Civ.P. 26, protective orders are warranted.

▇ Fed.R.Civ.P. 26 states that "for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This Court interprets the requirement of good cause and the phrase, "which justice requires," to encompass a standard of reasonableness. Where a party will suffer unreasonable annoyance or embarrassment, protective orders should be granted. A mere showing of some embarrassment, annoyance or expense, however, does not require the issuance of a protective order. A burden which litigants in our society must bear is that sometimes the public may learn of information which the litigant would rather the public not know. Courts have the resources to examine the issues and intervene only when that burden becomes unreasonable.

District courts are today being bombarded by an ever increasing number of requests for protective orders. Some of the increase may be attributed to legitimate attempts by litigants to stem the increasing use of abusive discovery tactics. Much of the increase, though, must be attributed to a practice among some attorneys to automatically seek protective orders in every case where any potential for embarrassment or harm, no matter how slight, exists. Fed.R.Civ.Pro. 26 does not require courts to utilize their scare recourses on such unnecessary satellite litigation.

▇ The Court views the instant request for a protective order as one of the latter kind. Defendant Ford has not made the requisite showing of good cause.

It is therefore ORDERED that defendant respond to plaintiff's production request No. 30, such response to include that relevant information which is stored electronically and which can be retrieved without undue burden or expense.[1] It is further ORDERED that defendant respond to plaintiff's interrogatory No. 20, such response to be limited as set out in plaintiff's motion to compel.[2]

1. Plaintiff's request for production No. 30 reads:

All compilations, summaries or analyses of alleged "park to reverse" occurrences reported or made known to you involving vehicles equipped with the same type of transmission as that in the Ericson vehicle.

2. Plaintiff's interrogatory No. 20 reads:

Please identify all litigation against you in which it has been alleged that there was a defect in the design of the type of transmission installed in the Ericson vehicle including the transmission selector parts.

In his motion to compel, the plaintiff limited the information sought by interrogatory No. 20 as follows:

Plaintiff respectfully submits that defendant should be ordered to respond to this interrogatory to the extent that it should furnish plaintiff with an identification of all litigation involving Ford light trucks, with a column shift mechanism and an FMX transmission, in which it is alleged that there was a spontaneous movement of the transmission into reverse.